# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ann C. Williams | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7628 | **DATE** | 3/28/2000 |
| **CASE TITLE** | TARO R. ADVANI vs. ANDREW CORPORATION | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to memorandum opinion and order the court denies defendant's motion for summary judgment [53-1]. This case will be reassigned to another judge for further proceedings.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 28 2000 date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| DL | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TARO R. ADVANI,        )
                                 )
       Plaintiff,        )
                                 )
       v.                 )        Case No. 96 C 7628
                                 )
ANDREW CORPORATION,     )
                                 )
       Defendant.     )

ENTERED
MAR 28 2000

## MEMORANDUM ORDER AND OPINION

Plaintiff Taro R. Advani ("Advani") brought this action against his former employer, Defendant Andrew Corporation ("Andrew"), alleging unlawful age and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e). Andrew now brings a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the court denies Andrew's motion for summary judgment.

1



## Background

Andrew Corporation hired Advani at an entry-level position as a draftsman in 1988. (Def.'s 12(M) Stmt. ¶ 5). Advani is of Indian national origin and at the time he was hired, he was 50 years of age. (Def.'s 12(M) Stmt. ¶ 4-5). Don Dufour ("Dufour"), who was over 40 years of age, but not of Indian national origin, acted as Advani's supervisor throughout most of his employment with Andrew. (Def.'s 12(M) Stmt. ¶ 12). In turn, Dufour was supervised by Vijay Chopra ("Chopra"), who was of Indian national origin and was also over the age of 40. (Def.'s 12(M) Stmt. ¶ 15, 17). During his employment at Andrew, Advani received two significant promotions. The first, he received in September of 1989 to the position of Designer II. (Def.'s 12(M) Stmt. ¶ 40). Advani requested his second promotion in October of 1992 to Design Engineer, and Dufour recommended it based on Advani's work as a Designer. (Def.'s 12(M) Stmt. ¶ 43, Pl.'s 12(N) Stmt. ¶ 44).

As early as 1992, Advani began to receive poor performance reviews. These poor performance reviews were issued around the same time that Advani began to make complaints of discrimination by Dufour and Robert Borske ("Borske"), who acted as Advani's supervisor for a

brief period.[1]  (Def.'s 12(M) Stmt. ¶ 66, Pl.'s 12(N) Stmt. ¶ 54).  Advani

addressed his complaints to Vicki Grochowski ("Grochowski"), an Andrew

Human Resources Manager.  (Def.'s 12(M) Stmt. ¶ 21, Pl.'s 12(N) Stmt.

¶ 19).    Pursuant to these complaints, Grochowski instructed Roger

Blaylock ("Blaylock"), another Andrew employee, to monitor the situation.

(Def.'s 12(M) Stmt. ¶ 23).    Another Andrew employee, Mr. Moss

("Moss") was also advised of the issues involving Advani's complaints.

(Def.'s 12(M) Stmt. ¶ 27). Andrew conducted an investigation into all of

Advani's complaints in 1993.  (Def.'s 12(M) Stmt. ¶ 58).

Prior to the time Advani began to complain of discrimination, he had

never received any documentation indicating that he performed his job

unsatisfactorily.  However, after he issued complaints about his pay and

discriminatory treatment, Andrew gave Advani several written notices of

his low performance, from both his supervisors and his peers.  (Def.'s

12(M) Stmt. ¶ 126).  With each notice that he would receive, Advani

would respond in writing to refute charges that his performance had

declined.  In addition, Andrew set up numerous meetings with Advani to

---

[1] Advani was transferred laterally to a different business group for about five months. During that time Borske acted as his supervisor.  (Def.'s 12(M) Stmt. ¶ 50).

3

discuss his poor performance and ways to improve. According to Andrew, Advani was continually unresponsive to any suggestions made by his supervisors. (Def.'s 12(M) Stmt. ¶67-68). Advani however contends that the criticisms were not true and that he committed himself to more responsibility in an attempt to improve. (Pl.'s 12(N) Stmt. ¶ 68).

Advani details several incidents in which his complaints of discrimination elicited negative responses from Andrew employees. In one meeting in which Advani complained of discrimination, Advani recalls Dufour telling him, "Well, it's management, and maybe you're just not fitting into their culture. And why don't you go and look for a job somewhere else." (Pl.'s Ex. 2, Advani Dep. at 116-117.) In another incident, in the summer of 1993, Advani submitted his response to an employee survey indicating that he thought Asians were discriminated against at Andrew. He was transferred soon thereafter and in September 1993, he received a negative performance review. In a meeting to discuss the review, Advani was asked if he was "ready to retire." (Pl.'s Ex. 12; Advani Dep. at 172.) Advani claims that in 1993, in another meeting one of his supervisors said, "Taro will be fired and we are going to save Andrew some money, whatever he makes, and he can go back

4

wherever he came from." (Pl.'s Ex. 12, Advani Dep. at 368.)

Andrew charges that many of Advani's designs were defective, but Advani claims that some of the designs Andrew refers to were not his. (Def.'s 12(M) Stmt. ¶ 84, Pl.'s 12(N) Stmt. ¶ 84). Ultimately, Dufour recommended that Advani be terminated. (Def.'s 12(M) Stmt. ¶ 14). Chopra and Blaylock approved Dufour's recommendation and in October of 1995, Andrew terminated Advani. (Def.'s 12(M) Stmt. ¶¶ 15, 130).

Advani subsequently brought suit against Andrew alleging employment discrimination under Title VII. Andrew now moves this court for summary judgment.

## Analysis

Andrew moves the court to enter summary judgment on its behalf under Rule 56 of the Federal Rules of Civil Procedure. The court will render summary judgment only if the factual record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Bratton v. Roadway Package Sys., Inc., 77 F.3d 168, 173 (7th Cir. 1996) (quoting Fed. R. Civ. P. 56(c)). The court will not render summary judgment if "a reasonable jury

could return a verdict for the nonmoving party." Sullivan v. Cox, 78 F.3d 322, 325 (7th Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. Bratton, 77 F.3d at 171 (citation omitted); Sullivan, 78 F.3d at 325 (citation omitted).

On a motion for summary judgment, the moving party "bears the initial burden of showing that no genuine issue of material fact exists." Hudson Ins. Co. v. City of Chicago Heights, 48 F.3d 234, 237 (7th Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

These burdens are reflected in Rule 56.1 of the Local General Rules for the Northern District of Illinois. See Waldridge v. American Hoechst Corp., 24 F.3d 918, 921-22 (7th Cir. 1994)[2]. Under Rule 56.1(a), the moving party must submit a statement of material facts in the form of short numbered paragraphs supported by specific references to the factual record. Under Rule 56.1(b), the non-moving party must submit a

---

[2] The United States District Court for the Northern District of Illinois recently adopted new rules concerning motions for summary judgment and renumbered the rules to reflect the Federal Rules of Civil Procedure. The substance and effect of the rules remain the same. See Local Rule 56.1.

response to each such paragraph, including (in the case of disagreement) specific references to the factual record.[3] If the non-moving party fails to disagree with a fact in the moving party's statement, the court will deem that fact admitted. See Local Rule 56.1(b). Similarly, if the non-moving party disagrees with a fact in the moving party's statement, but fails to support its disagreement with a specific reference to the factual record, the court may deem that fact admitted as well. Fed. R. Civ. P. 56(e); Flaherty v. Gas Research Institute, 31 F.3d 451, 453 (7th Cir. 1994). The court reminds the parties of the necessity and importance of complying with the local rules pertaining to motions for summary judgment. The Seventh Circuit has made clear " 'the exacting obligation [local] rules impose on a party contesting summary judgment'." Little v. Cox's Supermarket, 71 F.3d 637, 641 (7th Cir. 1995) (citations omitted). Local rules 56.1(a) and (b), like their predecessors 12(M) and 12(N), are designed to "inform the court of the evidence and arguments in an organized way--thus facilitating its judgment

---

[3] Rule 56.1(b) further instructs the non-moving party to submit a statement of any additional facts requiring denial of summary judgment, in the form of short numbered paragraphs supported by specific references to the factual record. In turn, Rule 56.1(a) instructs the moving party to submit a concise reply to any such additional facts, including (in the case of disagreement) specific references to the factual record.

of the necessity for trial." Id. These rules clearly and specifically put the moving and non-moving parties on notice as to the required material each party must present to the court.

Andrew moves for summary judgment claiming that Advani cannot establish a prima facie case of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e). Alternatively, Andrew argues that even if Advani could establish a prima facie case, as his employer, it had a legitimate, nondiscriminatory reason for terminating him.

The law provides two ways for Advani to present a prima facie case of a Title VII violation. He may use the direct method and present direct or circumstantial evidence of intentional discrimination, or he may present indirect proof of discrimination and rely on the McDonnell Douglas burden-shifting method. See McDonnell-Douglas Corp. v. Green, 411 U.S. 792, (1973). Advani does not establish a prima facie case of discrimination with direct evidence. However, he does present sufficient facts under the McDonnell-Douglas burden-shifting test.

**Prima Facie Case**

To make a prima facie case under McDonnell-Douglas, Advani must prove (1) that he belongs to a protected class; (2) that he was meeting his employer's legitimate performance expectations; (3) that he suffered an adverse employment action; and (4) that he was treated less favorably by his employer than similarly situated employees outside the protected class. See Hughes v. Brown, 20 F.3d 745, 746 (7th Cir. 1994). "These four prongs present a low hurdle" to the plaintiff. Id. The prima facie case "is a flexible standard that 'is not intended to be rigidly' applied." Collier v. The Budd Co., 66 F.3d 886, 890 (7th Cir. 1995) quoting Mitchell v. Worldwide Underwriters Ins. Co., 967 F.2d 565, 567 (11th Cir. 1992).

If Advani can show these four elements, he creates the presumption that Andrew unlawfully discriminated against him. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). This "places upon the defendant the burden of producing an explanation to rebut the prima facie case [and] of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." Id. If the nondiscriminatory reason is believed by the trier of fact, that would support a finding that unlawful discrimination was not the cause of the

termination.  Id.

However, Advani may still defeat summary judgment by showing that Andrew's asserted legitimate reason was a pretext for the discrimination or his claim will fail.  Id.  Pretext can be established "by proving one of the following: '(1) [d]efendant's explanation had no basis in fact, or (2) the explanation was not the real reason, or (3) at least the reason state was insufficient to warrant the discharge.'" Hughes, 20 F.3d at 747 quoting Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1133 (7th Cir. 1994).

Andrew does not challenge Advani's ability to show that he belongs to a protected class or that he suffered an adverse employment action. Instead, Andrew contends that Advani has failed to demonstrate that he performed his job satisfactorily or that he was treated less favorably than others under identical circumstances.  Andrew relies heavily on the fact that it gave Advani six poor performance reviews during his last two years of employment.  Accordingly, Andrew urges the court to conclude that that Advani was not meeting Andrew's expectations.  Andrew further asserts that there is no evidence that it treated Advani less favorably than other younger, non-Indian engineers who performed as Advani did.

In response, Advani argues that he consistently met Andrew's legitimate performance expectations and that this is evidenced by the two merit-based promotions he received, the various raises he received, and the fact that he did not receive negative feedback until after he complained of discrimination.

Viewing the facts in a light most favorable to Advani, the court concludes that Advani has created a genuine issue as to whether he was meeting Andrew's legitimate performance expectations.   Unlike plaintiff in Speer v. Rand McNally and Company, No. 95 C 6269, 1996 WL 667810, *7 (N.D. Ill. Nov. 16, 1996) (granting summary judgment where plaintiff presented no proof that her performance evaluations did not accurately reflect the level of her work), Advani presents evidence calling into question some of the appraisals of his work.   Advani received two significant promotions while employed by Andrew.   These promotions were accompanied by pay increases.   (Pl.'s 12(N) Stmt. ¶ 44).   Additionally, when Advani received a negative performance review, he contested it.   He generated correspondence calling into question the conclusions his supervisors made and denying that the mistakes they claim he made were actually his.   At the very least, Advani has created

11

a genuine issue of whether or not he was performing up to Andrew's expectations.

Advani has also created a genuine issue as to whether Andrew treated him less favorably than similarly situated employees. First, Advani was replaced by a younger employee who was not of Indian national origin. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1144 (7th Cir. 1994) (finding that plaintiff made a prima facie case with evidence that he, at age 49, was satisfying his employer's expectations, but was replaced by someone age 40). Furthermore, while he was employed at Andrew, Advani received a lower salary than other non-Indian engineers. Advani was paid $32,000 a year, whereas other engineers with the same experience and qualifications were paid $50,000 annually. Viewing these facts, along with the various comments made to Advani in response to his complaints of discrimination suggest that a reasonable trier of fact could conclude that Advani was meeting Andrew's legitimate performance expectations. Therefore, the court finds that sufficient evidence exists to make out a prima facie case of Title VII employment discrimination.

**Legitimate Reason for Termination or Pretext**

Because Advani met his burden of establishing a prima facie case, the burden now shifts to Andrew to show that it had a legitimate reason for terminating Advani. Andrew claims to have fired Advani because of his poor job performance. Specifically, Andrew points to the poor performance reviews Advani received from both his supervisors and his peers, his alleged refusal to consider suggestions for improvement, and his defective designs. These are legitimate nondiscriminatory reasons for termination. However, Advani asserts that they are merely pretext for Andrew's discrimination. The question, therefore, is "whether [Advani] has created a genuine issue concerning the sincerity of the proffered reasons for his discharge." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1039 (7th Cir. 1993). The court finds that Advani has met this burden.

In support of its argument that the decision to fire Advani was legitimate, Andrew points to the poor performance reviews Advani received from both his supervisors and his peers. Andrew provided Advani with six, written notices detailing his performance problems from September 1993 to October 1995. (Def.'s 12(M) Stmt. ¶ 67). In that same time period, Andrew gave Advani several oral performance reviews.

(Def.'s 12(M) Stmt. ¶¶ 79, 88). Each of these reviews identified problems with Advani's performance. Advani contends that Andrew's criticism misses the mark. (Pl.'s 12(N) Stmt. ¶ 69). He also notes that these poor performance reviews from his supervisors did not begin until after he started to complain of discrimination by Dufour and Borske. (Pl.'s 12(N) Stmt. ¶ 67).

Advani also received poor performance reviews from peers. In August of 1995, Advani received evaluations with negative appraisals of his performance from eighteen of his peers. (Def.'s 12(M) Stmt. ¶¶ 126-127). Advani contends that these reviews were not taken in accordance with corporate policy and that the number of evaluations obtained suggest Andrew's intention to get rid of him. (Pl.'s 12(N) Stmt. ¶ 127).

Andrew's corporate guidelines specifically provide that "the supervisor should receive from the employee, a list of 5 to 7 individuals to be used for peer input...[f]rom this list, the supervisor should take a minimum of 3 names and has the option of adding 2 names of his or her choosing." (Pl.'s 12(N) Stmt. ¶127). By taking eighteen peer evaluations instead of the usual five, Andrew clearly deviated from its corporate policy. Yet Andrew offers no explanation for this change. Even more

questionable is the fact that many of the peer evaluations came from those with whom Advani had little contact. (Pl.'s 12(N) Stmt. ¶ 126). Advani argues that Andrew purposely sought out evaluations from those with little knowledge of his work in an effort to elicit unfavorable reviews. (Pl.'s 12(N) Stmt. ¶126). If that is so, this too would be evidence of pretext. See Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 848 (7th Cir. 1992) (noting that the relevant question is "whether the employer's description of its reasons [for adverse employment action] is honest").

Next, Andrew claims that another reason they fired Advani was because he continuously refused to consider suggestions made to improve his job performance. (Def.'s 12(M) Stmt. ¶¶ 71-75). The evidence, however, does not bear out this claim. Advani maintains that he did in fact improve his performance and even took on more responsibility. (Pl.'s 12(N) Stmt. ¶ 72). Advani even gave to Andrew a list of ways in which he thought he could improve. (Pl.'s 12(N) Stmt. ¶ 68).

Andrew also maintains that Advani lacked the knowledge, organizational and communication skills necessary to adequately perform his job, that he failed to check his own designs for accuracy, that it took

him longer to complete projects, and that he lacked the flexibility needed for his position. (Def.'s 12(M) Stmt. ¶¶ 111-121). As evidence of these problems, Andrew offers various pictures of Advani's designs that were taken in October 1994 and March 1995. Dufour claims that these pictures show the defects in Advani's designs and provide evidence of projects Advani performed unsatisfactorily. (Def.'s 12(M) Stmt. ¶¶ 109, 122). Advani contends that not all of these projects pictured were his designs and presents some evidence that designs he created were not defective. (Pl.'s 12(N) Stmt. ¶¶ 109, 122).

In addition to presenting evidence that conflicts with Andrew's appraisal of his work performance, Advani cites several incidents that work to raise a genuine issue as to the pretextual nature of Andrew's proffered reason for terminating him. Where discriminatory remarks have been made in relation to an adverse employment decision in question, the court has recognized those remarks as potential evidence of discrimination. See Fuka v. Thomson Consumer Elecs., 82 F.3d 1397, 1406 (7th Cir.1996)(finding that discriminatory statements can support an inference of discrimination under the indirect, burden-shifting method). "The reasonableness of such an inference in any given case would of

him longer to complete projects, and that he lacked the flexibility needed for his position. (Def.'s 12(M) Stmt. ¶¶ 111-121). As evidence of these problems, Andrew offers various pictures of Advani's designs that were taken in October 1994 and March 1995. Dufour claims that these pictures show the defects in Advani's designs and provide evidence of projects Advani performed unsatisfactorily. (Def.'s 12(M) Stmt. ¶¶ 109, 122). Advani contends that not all of these projects pictured were his designs and presents some evidence that designs he created were not defective. (Pl.'s 12(N) Stmt. ¶¶ 109, 122).

In addition to presenting evidence that conflicts with Andrew's appraisal of his work performance, Advani cites several incidents that work to raise a genuine issue as to the pretextual nature of Andrew's proffered reason for terminating him. Where discriminatory remarks have been made in relation to an adverse employment decision in question, the court has recognized those remarks as potential evidence of discrimination. See Fuka v. Thomson Consumer Elecs., 82 F.3d 1397, 1406 (7th Cir.1996)(finding that discriminatory statements can support an inference of discrimination under the indirect, burden-shifting method). "The reasonableness of such an inference in any given case would of

course depend on the nature of the allegedly discriminatory remarks, their relationship to the employment decision in question, the nature of the stated reason for the employer's action, and the existence of other evidence calling that reason into doubt." Id.

Advani contends that on several occasions, his supervisors made discriminatory comments regarding his employment at Andrew. In a 1994 review meeting, Dufour told Advani that "you are a low paid employee and I made sure it stays that way." (Pl.'s 12(N) Stmt. ¶ 108). In addition, Dufour stated that management was responsible for his low pay and that "maybe you're not just fitting into their culture." (Pl.'s Resp. Def.'s Mot. Summ. J. at 4). At another meeting in 1993, in Advani's presence, DeSana, of upper management, stated that "it will take human resources maybe a year or so, but Taro will be fired and we are going to save Andrew some money, whatever he makes, and he can go back wherever he came from." (Pl.'s Resp. Def.'s Mot. Summ. J. at 5). Especially noteworthy is the statement from DeSana to Dufour instructing Dufour to "close" on Advani in the same way that Andrew had "closed" on DeMarco, a former employee who had been fired by Andrew. (Pl.'s 12(N) Add'l Stmt. ¶ 4). Advani points to the letter "closing" on DeMarco

as almost identical to that "closing" on him. Id. When viewed along with Advani's other evidence, the court finds that these comments speak directly to Andrew's decision to terminate Advani and suggest that Advani's job performance was not the only thing motivating Andrew's decision to fire him.

The court rejects Andrew's argument that it should apply the same hirer/firer inference against Advani. "'[I]n cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by an employer.'" Rand, 42 F.3d at 1147, (citing LeBlanc v. Great American Ins. Co., 6 F.3d 836, 847 (1st Cir.1993)). Advani may have been hired and fired by essentially the same person, but he was hired in 1988 and not terminated until 1995. In addition, from the evidence it appears that a number of persons were involved the decision to fire Advani. As such, the court believes that no real inference can be drawn from the fact that Advani was hired and fired by the same individual.

Viewing all of the evidence, the court finds that Advani has created

a genuine issue as to whether Andrew's proffered reason for firing him was pretextual. The question as to the sincerity of Andrew's proffered reasons for Advani's termination is best left to the trier of fact. Therefore, the court denies Andrew's motion for summary judgment.

## Conclusion

For the reasons set forth above, the court denies defendant's motion for summary judgment.

**ENTER:**

**Ann Claire Williams,
Judge**

**Dated:** March 28, 2000

g:\civ.opn\advani2.opi